**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

ELGIN HILLIARD, SR.

    Plaintiffs,

v.                                   CASE NO._____

CITY OF HIALEAH, HIALEAH POLICE
DEPARTMENT, SERGIO VELAZQUEZ in his
official capacity, HIALEAH HOUSING AUTHORITY,
MAIDA GUTIERREZ, in her official capacity, and
RENE GUTIERREZ, individually.

    Defendants.

_____

## COMPLAINT

    Plaintiff, ELGIN HILLIARD, SR. sues Defendants, CITY OF HIALEAH, HIALEAH POLICE DEPARTMENT, SERGIO VELAZQUEZ in his official capacity, HIALEAH HOUSING AUTHORITY, MAIDA GUTIERREZ, in her official capacity, and RENE GUTIERREZ, individually, jointly and severally, and says:

### Jurisdiction

    1.  This action is brought pursuant to 42 U.S.C. §§1983, 1988, the First, Fourth, and Fourteenth Amendments to the United States Constitution, the Federal Fair Housing Act, the Americans with Disabilities Act, and the tort laws of Florida. Jurisdiction is founded on 28 U.S.C. §§1331, 1343, 42 U.S.C. §1988, the constitutional provisions mentioned above, and under the tort law of Florida. Supplemental jurisdiction, and joinder of parties for additional state law claims is proper pursuant to 28 U.S.C. §1367(a) because they form part of the *same case or controversy*. Plaintiff asserts multiple state tort law claims.

    2.  Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) as all Defendants work and/or reside in this district and all of the acts and omissions giving rise to this

action occurred in the City of Hialeah, Florida.

3.   In connection with the acts, practices and violations alleged below, Defendants City of Hialeah (hereinafter "City"), Hialeah Police Department, (hereinafter "Hialeah PD" or "HPD"), Sergio Velazquez (hereinafter "Velazquez"), Hialeah Housing Authority (hereinafter "HHA"), Maida Gutierrez (hereinafter "M. Gutierrez"), Margarita De La Cruz (hereinafter "De La Cruz"), Leyda Halphen ("hereinafter "Halphen"), and Rene Gutierrez ("hereinafter "Officer Gutierrez"), have each, either directly or indirectly violated clearly established constitutional rights, as well as statutory and common law duties owed to Plaintiff.

4.   All conditions precedent under Florida law for the filing of state law claims have been satisfied.

## Parties

5.   Plaintiff Elgin Hilliard, Sr. (hereinafter "Hilliard") at all times material hereto, has been a resident of Miami-Dade County, Florida, over the age of eighteen years and otherwise able to sue in his own capacity.

6.   Defendant City of Hialeah, Florida is a municipality duly organized under the laws of the State of Florida. City is the governmental entity responsible, as a matter of law, for the actions of the Hialeah PD and the HHA, its officials, agents and employees, insofar as the Hialeah PD and HHA are administrative subdivisions of the City of Hialeah.

7.   Defendant Hialeah Police Department, is an administrative subdivision of the City of Hialeah.

8.   Defendant Hialeah Housing Authority, is an administrative subdivision of the City of Hialeah.

9.   Defendant Sergio Velazquez is the Chief of Police for the City of Hialeah, a Florida municipality. Velazquez was appointed Chief by the Hialeah City Council, and has served in that

2

capacity since 2012. Velazquez is responsible for the officers in his employ, and ensuring that the officers, employees, servants and agents of the Hialeah Police Department obey the laws of the State of Florida and the United States, Defendant Velaquez is the final policymaker or the Hialeah City Council's delegee responsible for all operational and investigative policies, training and supervision, practices, customs, and orders of the Hialeah Police Department.

10. Defendant Maida Gutierrez, is the Chairperson of the Hialeah Housing Authority for the City of Hialeah, a Florida municipality. M. Gutierrez was appointed Chairperson by the Hialeah mayor and has served in that capacity since 2009. M. Gutierrez is responsible for the officers in her employ, and ensuring that the employees, servants, and agents of the Hialeah Housing Authority obey the laws of the State of Florida and the United States, Defendant M. Gutierrez is the final policymaker or the Hialeah mayor's delegee responsible for all operational and investigative policies, training and supervision, practices, customs, and orders of the Hialeah Housing Authority.

11. Defendant Rene Gutierrez is a duly appointed law enforcement officer of the Hialeah Police Department, at all times material hereto acting under color of law, to wit: under the color of statutes, ordinances, regulations, policies, practices, customs and usages of the City of Hialeah, Velazquez, and/or the State of Florida. Defendant Officer Gutierrez is being sued in his individual capacity.

## General Allegations of Fact

12. Defendants City of Hialeah, HPD, Valezquez, and Officer Gutierrez violated Plaintiff's constitutional rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution as well as the laws of Florida. It is further alleged that these violations were committed as a result of malice, recklessness, deliberate indifference, and/or plain incompetence Officer Gutierrez, and/or Velazquez; and/or pursuant to the policies, practices and/or customs of Defendant City.

13. Defendants City of Hialeah, HHA, and M. Gutierrez, violated Plaintiff's constitutional rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution as well as the laws of Florida and the Federal Fair Housing Act. It is further alleged that these violations were committed as a result of malice, recklessness, deliberate indifference, and/or plain incompetence; and/or pursuant to the policies, practices and/or customs of Defendant City.

14. In or about 2014, Hilliard applied for a Section 8 voucher and was placed on the HHA waiting list.

15. In 2015, Hilliard, became disabled after a work accident and often uses a cane for assistance with walking.

16. Due to his disabilities, Hilliard became, and remains to this day, unable to work.

17.  On or about April 25, 2016, Hilliard attended a meeting with Margarita De La Cruz, the HHA intake worker assigned to his application, in order to provide Ms. De La Cruz with documents she had requested from him.

18. During this meeting, despite being presented with ample evidence of Hilliard's disabilities, Ms. De La Cruz accused Hilliard of lying about his disability, stating that he was not disabled "in [her] eyes."

19. On or about May 17, 2016, Ms. De La Cruz called Hilliard and asked him to return to the HHA office to provide a letter stating how much money he had received from the settlement of his workers' compensation claim, demanding that he needed to provide this letter within the next few hours.

20. Hilliard, using his cane to walk, arrived at the HHA office with his letter a couple hours later. The HHA employees present included Ms. De La Cruz and Lena Halphen. Also present was on duty Hialeah Police Officer Defendant R. Gutierrez.

21. Ms. De La Cruz met Hilliard in the lobby, looked over the letter, and immediately

accused Hilliard of lying about the amount of the workers' compensation claim settlement, stating, "they said they gave you $25,000.00."

22.  Hilliard calmly explained to Ms. De La Cruz the amount he stated in the letter the amount of money he received, after attorney fees and costs.

23.  At that time, Hilliard informed Ms. De La Cruz that her recent questions and attitude towards him were making him feel uncomfortable and that he felt she had been giving him a harder time ever since he reported to her that he was disabled and that his income was limited. Ms. De La Cruz then went back into her office alone to review his letter and left Hilliard sitting in the lobby.

24. Hilliard waited in the lobby, quietly watching television, for about 15 minutes, at which time he decided to step outside to stretch as he was feeling stiff from sitting too long due to his arthritis.

25. A few minutes later, Hilliard came back inside the lobby and noticed the television had been turned off. Hilliard politely asked about it being turned off and Ms. Halphen responded rudely, to which Hilliard stated he felt like he was being treated unfairly at that moment, possibly due to his race and/or disability, as on prior occasions he had seen Latino clients catered to regarding the television.

26. Hilliard explained that he was dealing with mental and physical disabilities at the time and asked Ms. Halphen if she could please be more considerate and accommodating to him.

27. After continued rudeness from Ms. Halphen, Hilliard told her he wanted to file a complaint against her for discrimination and harassment.

28. Ms. Halphen gave Plaintiff a complaint form, told him to whom he should address, but stated nothing would be done about it.

29. Ms. Halphen then informed Hilliard she was going to call the police, at which time Officer Gutierrez, who was on duty at HHA, approached Hilliard and instructed him step outside.

30. Hilliard complied, slowly walking outside with Officer Gutierrez as he was using the cane to walk.

31. Hilliard asked Officer Gutierrez what the problem was and Officer Gutierrez replied by accusing Hilliard of being drunk and smoking marijuana, neither of which were true.

32. In fact, Hilliard's subsequent arrest report clearly states Hilliard was *not* under the influence of alcohol or drugs.

33. Hilliard never raised his voice, acted in a threatening manner, or did anything else to give Officer Gutierrez any reason to think that Hilliard was breaking, or would be breaking, any law. Officer Gutierrez simply did not like something Hilliard said to him and/or Ms. Halphen.

34. Once outside, Mr. Hilliard again asked Officer Gutierrez what the problem was. Officer Gutierrez replied by saying he felt threatened by Mr. Hilliard holding his cane in his hand; therefore, Mr. Hilliard placed his cane on the side of the building structure and placed his HHA complaint paperwork on the ground so that Officer Gutierrez could see he had nothing in his hands.

35. Mr. Hilliard's hands were now empty with no objects in them and he further placed both of his hands behind his back and stood in a non-threatening manner to finish his conversation with Officer Gutierrez.

36. For unknown reasons, Officer Gutierrez decided Mr. Hilliard was taking a threatening stance, and told Mr. Hilliard that he was "squaring off against" him.

37. Mr. Hilliard again began asking Officer Gutierrez what the problem was, at which point Officer Gutierrez started to reach toward his hip at which time Mr. Hilliard believed Officer Gutierrez may be reaching for his gun or Taser.

38. However, instead of brandishing his firearm or Taser, Officer Gutierrez changed his focus to another patron, a Black woman parked in a nearby space, asking her if she and Hilliard were together and if the vehicle belonged to Mr. Hilliard.

39. Mr. Hilliard told Officer Gutierrez that he thought Officer Gutierrez was harassing the woman (who was not with him and who Mr. Hilliard had never met) at which point Officer Gutierrez told Mr. Hilliard to put his hands on the wall and that he was under arrest.

40. Mr. Hilliard yet again complied, even though he knew he had done nothing wrong.

41. As Officer Gutierrez placed Mr. Hilliard's hand behind his back and into handcuffs, he stated to Hilliard, "who is in charge now, boy?" and "you hear those police sirens? You're going to jail now, nigger."

42. At that point, according to Officer Gutierrez's notes, he pulled his Taser and aimed it at Plaintiff.

43. Approximately six (6) to eight (8) Hialeah Police Officers shortly arrived on scene; however, as Mr. Hilliard was complying, it took only one officer to take custody of Mr. Hilliard, place a second set of handcuffs on him, and place him in a squad car.

44. From the squad car, Mr. Hilliard watched and listened as the newly arrived HPD Officers questioned Officer Gutierrez and Ms. Halphen.

45. Mr. Hilliard was never questioned, nor was the woman in her car who witnessed the entire event.

46. While Mr. Hilliard was sitting in the back of the squad car, Officer Gutierrez stood by the back window where. Mr. Hilliard was sitting and continued to harass and threaten him, even spitting in his face.

47. Officer Gutierrez screamed at Mr. Hilliard, "if you show back up on this property that your Black ass will be sorry!"

48. Despite Gutierrez knowing that his accusations and assumptions were unfounded, and HPD failing to exercise due diligence in conducting an investigation, Mr. Hilliard was placed under arrest for assault on an officer and disorderly conduct and was also trespassed from HHA property.

49. Mr. Hilliard was in police custody for approximately 16 hours as a result of this incident: approximately 1.5 hours riding in the police car and approximately 14.5 hours in jail, during which he spent the night sleeping on a hard bunk, having to climb up and down off of it for headcounts until he was bonded out by his family.

50. As a direct and proximate result of his wrongful arrest, Mr. Hilliard suffered, and continues to suffer, substantial aggravations and exacerbations of his painful arthritis and depression.

51. On July 14, 2016 the criminal prosecution initiated by Officer Gutierrez was terminated by the prosecuting authority of Miami-Dade County via nolle prosequi.

52. To the extent that Officer Gutierrez was able to, and/or did, understand that his arrest of Hilliard violated clearly established civil rights held by Mr. Hilliard, Officer Gutierrez's actions were guided by the knowledge that he could do so with impunity, and without fear of discipline, oversight, meaningful review and/or scrutiny by /Velazquez.

53. Upon information and belief, video evidence, which apparently exists despite HPD and HHA's failure to provide it in response to a public records request, would show that at no time did Hilliard threaten or move towards Officer Gutierrez as he claimed in his report. Officer Gutierrez did not have probable cause for an arrest of Mr. Hilliard. He did not, in fact, even have reasonable suspicion of criminal behavior justifying even the briefest of detentions.

54. Officer Gutierrez very plainly, and under the color of law, falsely detained and arrested Mr. Hilliard.

55. On or about June 15, 2016, the Miami-Dade State Attorney's Office decided to not file formal charges against Mr. Hilliard for the aggravated assault on a police officer due to there being "insufficient evidence" to file formal charges and filed the disorderly conduct charges in county court.

56. However, on or about July 14, 2016, the State Attorney filed a nolle prose in the disorderly conduct case as well.

57. On May 24, 2016, HHA further discriminated against Mr. Hilliard by denying his application for Section 8 housing on specious grounds.

58. The stated basis for the denial was "Threatened Abusive Behavior towards PHA Personnel."

59. Mr. Hilliard successfully fought the denial. The hearing officer found the witnesses for HHA to have inconsistent testimony and stated, "the supposed language of Mr. Hilliard was not harsh or verbally abusive than the confirmed sarcastic remarks made from the Hialeah Housing Authority's employee."

60. The impact of the actions of the Hialeah Housing Authority, Officer Gutierrez, and the Hialeah Police Department on Mr. Hilliard have been significant, to say the least. On June 16, 2016 at 9:00 am, Mr. Hilliard, who has no other criminal record, was arraigned on felony charges of aggravated assault on a law enforcement officer; however, the State Attorney declined to file an information and the charges were dismissed after they reviewed the video recording of the incident.

61. Additionally, on July 13, 2016 at 9:00 am, Mr. Hilliard was arraigned on misdemeanor charges of breach of the peace and, once again, after reviewing the video recording, those charges were summarily dismissed as well.

62. Mr. Hilliard has also suffered an increase in his arthritic pain due to the arrest. His pain medication has been increased three times since the arrest.

63. Additionally, Mr. Hilliard feels less safe in general since the date of the incident. His ability simply to go about his daily life with the sane peace of mind he enjoyed prior to this incident no longer exists.

64. Moreover, Officer Gutierrez violated Mr. Hilliard's constitutionally right to be free from

unreasonable seizure, ridiculed him, put him in fear for his safety, even his life, and did so in open public.

65. Since the incident, Mr. Hilliard has needed to avail himself of psychiatric help, and will continue to need to do so in the future to attempt, to address the damage caused by Officer Gutierrez's false arrest and both Officer Gutierrez's and HHA's blatant abuse of authority.

66. As stated above, Mr. Hilliard's application for housing was also wrongfully denied due to this incident and despite the reversal of the denial, he has still not received a response from HHA on his application. In fact, when he types his name in the HHA waiting list database, he receives a response that stating "No Applicant Found." Therefore, Mr. Hilliard has been homeless throughout this process and remains homeless as of today.

67. Finally, because Mr. Hilliard was wrongfully arrested, his car was towed from the HHA lot, where it was legally parked in a handicapped space at the time of his arrest.

68. Defendant City has been, and continues to be, deliberately indifferent to the promulgation of policies and/or customs insufficient to protect the constitutional rights of the citizenry it is obligated to serve.

69. The City's deliberate indifference, and allowance of deficient City policy and/or custom, created a foreseeable assurance and likelihood that the rights of citizens would become the victims of constitutional violations by Hialeah PD officers and HHA personnel.

70. The injuries suffered by Mr. Hilliard was the result this deliberate indifference in that the failure of Velazquez and M. Gutierrez to take meaningful and appropriate action by retraining, discipline, supervision, and/or any other remedial action, in instances where City officers made illegal arrests and HHA personnel made arbitrary and discriminatory decisions regarding citizens who applied for housing, allowed Defendants' officers and employees to believe they could violate Plaintiff's rights, as set forth herein, with impunity. As such, the deliberate indifference to the rights

of citizens by the City was the moving force that resulted in the injury to Mr. Hilliard.

71. Plaintiff has retained the Goodwin Firm to represent him in this matter and has agreed to pay a reasonable fee for this representation.

## COUNT I
## FALSE ARREST AND/OR IMPRISONMENT – 42 U.S.C. §1983 CLAIM
### (DEFENDANT GUTIERREZ)

72. Plaintiff hereby incorporates paragraphs 1- 71 above as if specifically set forth herein.

73. On or about May 17, 2016, Defendant Officer Gutierrez did unlawfully detain and/or seize Elgin Hilliard, Sr. by unlawfully restraining his movement and freedom while acting under the color of law.

74. The subjective motivations of Officer Gutierrez for accosting Mr. Hilliard, immediately detaining him, and eventually placing him in custody are known only to him. However, at the time Hilliard was not engaged in any activity that any reasonable person would believe to be criminal in nature and supportive of probable cause or arguable probable cause. Mr. Hilliard simply was exercising his First Amendment right to speech in a calm and peaceful manner.

75. As a direct and proximate cause of the illegal detention and arrest Mr. Hilliard suffered financial loss in the form of bail and other costs, loss of freedom by incarceration, physical injury, embarrassment and indignity, humiliation and/or emotional injury leading to interference with his enjoyment of life, including his continued homelessness, stress, anxiety, and depression.

**WHEREFORE**, the Plaintiff Elgin Hilliard, Sr. requests this Court enter judgment against Defendant Officer Gutierrez individually, and award Plaintiff compensatory and punitive damages, attorney's fees and costs, as well as all other further relief this Court deems just and proper.

## COUNT II
## FALSE ARREST AND/OR IMPRISONMENT - STATE TORT CLAIM
### (DEFENDANT OFFICER GUTIERREZ)

76. Plaintiffs hereby incorporate paragraphs 1- 71 above as if specifically set forth herein.

77.   On or about May 17, 2016, Defendant Officer Gutierrez did unlawfully detain and/or seize Elgin Hilliard, Sr. by unlawfully restraining his movement and freedom while acting under the color of law.

78.   The unlawful arrest of Mr. Hilliard was the result of the plain incompetence of Officer Gutierrez while acting within the course and scope of his employment, and pursuant to the discretionary authority vested in him by the City.

79.   As specifically set forth above the illegal arrest and false imprisonment stem from actions by Officer Gutierrez which were malicious, taken in bad faith, and/or with willful disregard for Mr. Hilliard's rights and well-being.

80.   As a direct and proximate cause of the illegal detention, and Mr. Hilliard's attempt to avoid same, he suffered financial loss in the form of attorney's fees, bail and other costs, loss of freedom by incarceration, physical injury by electrical shock, embarrassment and indignity, humiliation and/or emotional injury leading to interference with his enjoyment of life, including his continued homelessness, stress, anxiety, and depression.

**WHEREFORE**, Plaintiff requests this Court enter judgment against Defendant Officer Gutierrez individually, and award Plaintiff compensatory and punitive damages, attorney's fees and costs, as well as all other further relief this Court deems just and proper.

**COUNT III**
**MALICIOUS PROSECUTION**
**(DEFENDANT OFFICER GUTIERREZ)**

81.   Plaintiff hereby incorporates paragraphs 1 - 71 as if specifically pled herein.

82.   As a direct and proximate result of the illegal arrest of Plaintiff, two criminal cases were commenced against him in Miami-Dade County (Case Nos. 16-CF-10247 and 16-MM-016617) Case No. ) on or about May 18, 2016.

83.   Case No. 16-CF-10247 was terminated in favor of Hilliard on or about February 6,

2014.

84.   Case No. was terminated in favor of Hilliard on or about July 13, 2016._

85.   The actions of Defendant Officer Gutierrez were without any legal justification such that they constituted malice because they stemmed from his own personal anger, rage, fears and/or vindictive purposes, and not the lawful execution of his discretionary duties as a police officer.

86.   As a direct and proximate result of Gutierrez's malice and the commencement of prosecution Hilliard suffered financial loss in the form of attorney's fees, bail and other costs, loss of freedom by incarceration, physical injury, embarrassment and indignity, humiliation and/or emotional injury leading to interference with his enjoyment of life, continued homelessness, stress, anxiety, depression, and loss of sleep.

**WHEREFORE**, Plaintiff requests this Court enter judgment against Defendant Officer Gutierrez individually, and award Plaintiff compensatory and punitive damages, attorney's fees and costs, as well as all other further relief this Court deems just and proper.

## COUNT IV
## EXCESSIVE USE OF FORCE – 42 U.S.C. §1983 CLAIM
### (DEFENDANT OFFICER GUTIERREZ)

87.   Plaintiffs hereby incorporate paragraphs 1-71 above, as if specifically set forth herein.

88.   At no time during the events giving rise to this action did Plaintiff commit any act, motion, or gesture to oppose any member of the Hialeah Police Department, including Officer Gutierrez, that might reasonably have been interpreted or perceived as a threat to their safety, health or well-being.

89.   Moreover, no probable cause or arguable probable cause existed for any arrest therefore any use of force was unjustified and excessive in violation of the Fourth Amendment.

90.   In an effort to conceal the illegal and violative nature of his actions, Defendant Officer Gutierrez did falsify official reports, and/or did fail to report or concealed the facts and

circumstances of his use of force.

91.   As a direct and proximate result of the force used against Plaintiff, he suffered physical injury by electrical shock, embarrassment and indignity, humiliation and/or emotional injury leading to interference with his enjoyment of life, continued homelessness, depression, stress, anxiety, and loss of sleep.

**WHEREFORE**, Plaintiff requests this Court enter judgment against Defendant Officer Gutierrez individually, and award Plaintiff compensatory and punitive damages, attorney's fees and costs, as well as all other further relief this Court deems just and proper.

**COUNT V**
**VIOLATION OF 42 U.S.C. § 1983**
**(DEFENDANT CITY OF HIALEAH)**

92.   Plaintiff incorporates paragraphs 1-71 above, as if specifically set forth herein.

93.   At all times hereto, the Hialeah City Council was the final policymaker of the City for the drafting, adoption, and implementation of ordinances and other policies formally regulating the actions of their employees with members of the general public and delegated these responsibilities to Defendant Velazquez as Chief of Police; in the alternative, Defendant was the final policymaker. In the years prior to May 2017, there were several practices and customs that were so widespread, in terms of duration and frequency, that the knowledge of and acquiescence in these practices is chargeable to the City Council.

94.   One improper practice was the failure of the HPD to fully investigate discrepancies and misstatements in arrest reports and other official documents prepared by HPD officers, thus thwarting appropriate discipline and potential criminal sanctions against HPD officers.

95.   Another improper practice was the repeated act by the HPD to routinely find what were in fact uses of excessive force to be justified or within guidelines. while at times acknowledging minor errors that led to minor, or no, discipline. This led directly to an atmosphere within the HPD

where officers believed that even the most outrageous acts of excessive force would be tolerated by the Department and the City.

96.   The practice of imposing no, or wholly inadequate, discipline on HPD officers was widespread, and the failure of the Chief of Police or City Council to impose appropriate discipline further led directly to an atmosphere within the HPD where officers believed that even the most outrageous violations of citizens' constitutional rights and other criminal acts by officers would be tolerated by the Department and the City, including such a belief by Defendant Officer Gutierrez, who arrested Plaintiff without any justification.

97.   This deliberate indifference to police misconduct evinces the existence of a custom in the City to tolerate excessive force and wrongful arrests. The presence of this custom demonstrates that the City of Hialeah has effectively ratified the type of police misconduct at issue in this case.

98.   The response by the City regarding Plaintiff's false arrest was a failure to fully investigate the matter in a timely fashion or to reprimand the subject HPD officer with a punishment that befit each particular violation of constitutional rights.

99.   The failure by Defendant City to diligently investigate and discipline its officers for official misconduct has created an atmosphere where the HPD's employees believe that such misconduct constitutes behavior that will be tolerated and will not be sanctioned.

100. These practices or customs of failing to properly investigate or discipline acts constituting unlawful arrest, excessive force or force sufficient to shock the conscience, and/or repetitive ratification of police misconduct, were the moving force behind and proximate cause of the deprivation of Plaintiff's Fourth and Fourteenth Amendment rights.

101. As a direct and proximate result of the deprivation of Plaintiff's Fourth and Fourteenth Amendment rights through unlawful arrest and use of excessive force, Mr. Hilliard suffered financial loss in the form of bail and other costs, loss of freedom by incarceration, physical injury,

embarrassment and indignity, humiliation and/or emotional injury leading to interference with his enjoyment of life, including continued homelessness, depression, stress, anxiety, and loss of sleep.

**WHEREFORE**, Plaintiff requests this Court enter judgment against Defendant City of Hialeah and award Plaintiff compensatory damages, attorney's fees and costs, as well as all other further relief this Court deems just and proper.

## COUNT VI
## <u>VIOLATION OF 42 U.S.C. §1983</u>
## (DEFENDANT VELAZQUEZ)

102. Plaintiff incorporates paragraphs 1-71 above, as if specifically set forth herein.

103. At all times material hereto, Defendant Velazquez was the official decision- maker charged with the responsibilities to adopt and implement policies, rules and regulations for the Hialeah PD to reasonably ensure the protection of the constitutional rights of the public.

104. These policies, rules and regulations necessarily included the implementation of policies and practices to detect, investigate, evaluate, and/or remediate and/or discipline the use of excessive force against, and/or false imprisonment of citizens, including Plaintiff by Hialeah PD officers.

105. Upon information and belief, Defendant Velazquez was deliberately indifferent to these responsibilities, and to the rights of the public by expressly and/or impliedly failing to adopt or implement such policies or practices.

106. To the contrary, pattern of constitutional violations, evidences a custom which condones and encourages the widespread use of excessive force by its police officers and/or illegal detention of citizens. Specifically, Defendant Velazquez maintained a custom that systematically ratified all uses of force and arrest without scrutiny or meaningful oversight, or adherence to his own written polices and/or orders.

107. In short, the written policies and orders of Defendant Velazquez intended to protect citizens from excessive use of force, and illegal arrest were systematically ignored by Defendant

Velazquez, and supplanted with a custom of deliberate indifference which resulted in such abuses.

108. Despite easily discernible and discoverable abuses of the written policies, and/or orders regarding the use of force, Defendant Velazquez, and/or his subordinate command staff, did approve and/or ratify any use of force, or imprisonment without meaningful investigation or due diligence.

109. Defendant Velazquez's personal review and then ratification and approval led to a widespread pattern of abuse of which he had personal knowledge but did deliberately fail to stop.

110. Defendant Velazquez's failure to implement his own written policies and orders, and his approval of any use of force or arrest without meaningful review or scrutiny strongly infers a reckless disregard for the rights of the public he is charged to protect from abuse of constitutional rights by City of Hialeah police officers.

111. Defendant Velazquez's failure to enforce or implement his own policies and orders to prevent such abuses, and instead ignore those policies, created an environment where the City of Hialeah police officers were comfortable in the knowledge that they could violate the rights of citizens without any concern for review, scrutiny, discipline, consequence, and/or reproach for their actions.

112. In this instance specifically, Defendant Velazquez's indifference to the rights of citizens was a direct and proximate cause of the injuries suffered by Plaintiff because at the time he assaulted and arrested Plaintiff, Officer Gutierrez knew and/or was reasonably comfortable in the knowledge that his actions would be approved and condoned by his supervisors, including Defendant Velazquez.

113. The failure of Defendant Velazquez to implement his own written policies and/or orders intended to prevent violation of the rights of citizens, and instead his maintenance of a tacit custom of ratifying the use of excessive force and/or illegal arrest by Hialeah PD officers was the

direct and proximate cause of the harm suffered by Plaintiff including financial loss in the form of bail and other costs, loss of freedom by incarceration, physical injury by electrical shock, embarrassment and indignity, humiliation and/or emotional injury leading to interference with his enjoyment of life, including continued homelessness, depression, stress, anxiety, and loss of sleep.

**WHEREFORE**, Plaintiff. requests this Court enter judgment against Defendant Velazquez individually, and award Plaintiff compensatory and punitive damages, attorney's fees and costs, as well as all other further relief this Court deems just and proper.

## COUNT VII
## VIOLATION OF 42 U.S.C. §1983
## (DEFENDANT HIALEAH HOUSING AUTHORITY)

114.     Plaintiff reasserts and realleges paragraphs 1 through 71.

115.     HHA's decision to terminate Plaintiff's participation in Section 8 Program violates the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States, 42 U.S.C. § 1437d(k), 1437f(o)(20)(D)(I), 24 C.F.R. § 982.553(c), and 24 C.F.R. § 982.555(e)(6).

116.     In order to deny an applicant based on alleged criminal activity, HHA bears the burden to ultimately prove that Plaintiff engaged in criminal activity by a preponderance of the evidence. *Basco v. Machin*, 514 F.3d 1177, 1182 (11th Cir. 2008).

117.     HHA has ignored the ruling of its own hearing officer and continued to deny Plaintiff his right to receive equal treatment by HHA.

118.     HHA's termination of Plaintiff's participation in the Section 8 Program violates his right to due process of law under the Fourteenth Amendment of the United States Constitution, and the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437d(k) and 1437f(o)(20)(D)(I) , and the applicable federal regulations found at 24 C.F.R. § 982.553(c) and 24 C.F.R. § 982.555(e)(6).

119.     Plaintiff was, and continues to be, deprived of a federal right by Defendants, acting under color of state law, in that HHA terminated his participation in the Section 8 program although

it lacked any probative evidence that he engaged in criminal activity in violation of his right to due process of law under the Fourteenth Amendment of the United States Constitution, the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437d(k), 1437f(o)(20)(D)(I), and the applicable federal regulations found at 24 C.F.R. § 982.553(c) and 24 C.F.R. § 982.555(e)(6), and she therefore has a cognizable claim under 42 U.S.C. §1983.

120.     Plaintiff has suffered damages by remaining homeless for over two years since the incident.

WHEREFORE, Plaintiff requests this Court enter judgment against Defendant City of Hialeah, and award Plaintiff compensatory damages, attorney's fees and costs, as well as all other further relief this Court deems just and proper.

### COUNT VIII
### VIOLATION OF 42 U.S.C. § 1983
### (DEFENDANT CITY OF HIALEAH)

121.     Plaintiff incorporates paragraphs 1-71 above, as if specifically set forth herein.

122.     At all times hereto, the Hialeah City Council was the final policymaker of the City for the drafting, adoption, and implementation of ordinances and other policies formally regulating the actions of their employees with members of the general public.

123.     Upon information and belief, in the years prior to May 2017, there were several practices and customs that were so widespread, in terms of duration and frequency, that the knowledge of and acquiescence in these practices is chargeable to the City Council.

124.     One improper practice was the failure of the HHA to fully investigate discrepancies and misstatements in arrest reports and other official documents prepared by HPD officers, thus thwarting appropriate discipline and potential criminal sanctions against HPD officers.

125.     Another improper practice was the repeated act by the HPD to routinely find what were in fact uses of excessive force to be justified or within guidelines. while at times acknowledging

minor errors that led to minor, or no, discipline. This led directly to an atmosphere within the HPD where officers believed that even the most outrageous acts of excessive force would be tolerated by the Department and the City.

126.    The practice of imposing no, or wholly inadequate, discipline on HPD officers was widespread, and the failure of the Chief of Police or City Council to impose appropriate discipline further led directly to an atmosphere within the HPD where officers believed that even the most outrageous violations of citizens' constitutional rights and other criminal acts by officers would be tolerated by the Department and the City, including such a belief by Defendant Officer Gutierrez, who arrested Plaintiff without any justification.

127.    This deliberate indifference to police misconduct evinces the existence of a custom in the City to tolerate excessive force and wrongful arrests. The presence of this custom demonstrates that the City of Hialeah has effectively ratified the type of police misconduct at issue in this case.

128.    The response by the City regarding Plaintiff's false arrest was a failure to fully investigate the matter in a timely fashion or to reprimand the subject HPD officer with a punishment that befit each particular violation of constitutional rights.

129.    The failure by Defendant City to diligently investigate and discipline its officers for official misconduct has created an atmosphere where the HPD's employees believe that such misconduct constitutes behavior that will be tolerated and will not be sanctioned.

130.    These practices or customs of failing to properly investigate or discipline acts constituting unlawful arrest, excessive force or force sufficient to shock the conscience, and/or repetitive ratification of police misconduct, were the moving force behind and proximate cause of the deprivation of Plaintiff's Fourth and Fourteenth Amendment rights.

131.    As a direct and proximate result of the deprivation of Plaintiff's Fourth and Fourteenth Amendment rights through unlawful arrest and use of excessive force, Mr. Hilliard suffered financial

loss in the form of bail and other costs, loss of freedom by incarceration, physical injury, embarrassment and indignity, humiliation and/or emotional injury leading to interference with his enjoyment of life, including continued homelessness, depression, stress, anxiety, and loss of sleep.

WHEREFORE, Plaintiff requests this Court enter judgment against Defendant City of Hialeah, and award Plaintiff compensatory damages, attorney's fees and costs, as well as all other further relief this Court deems just and proper.

**COUNT IX**
**RETALIATION UNDER THE FEDERAL FAIR HOUSING ACT**
**(DEFENDANTS HIALEAH HOUSING AUTHORITY and MARGARITA DE LA CRUZ)**

132.     Plaintiff incorporates paragraphs 1-73 above, as if specifically set forth herein.

133.     The Fair Housing Act, 42 U.S.C. § 3617, et seq., and the Florida Fair Housing Act, § 760.37, et seq, are interpreted in pari materia. All make it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise of, or on account of his having exercised, or on account of his having aided or encouraged any other person in the exercise of any fair housing right.

134.     The retaliation provisions of the Fair Housing Acts have been broadly applied to reach all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws.

135.     The denial of Plaintiff's application based on obviously mischaracterized evidence appears to be pretextual and violates the Fair Housing Act's prohibition against retaliatory conduct.

136.     The actions of Defendants were for the purpose of coercing, intimidating, threatening, or interfering with Plaintiff's exercise of his fair housing rights.

137.     As a result of Defendants' retaliatory conduct, Plaintiff has suffered from homelessness, embarrassment and indignity, humiliation and/or emotional injury leading to interference with his enjoyment of life, including continued homelessness, depression, stress, anxiety, and loss of sleep.

WHEREFORE, Plaintiff demands judgment and relief for his tangible and intangible

damages, compensatory damages, punitive damages, attorney's fees, costs for prosecuting these matters, and any such further relief as this Court deems just and equitable against Defendants.

## Trial by Jury

138.    Plaintiff demands trial by jury for all issues so triable by right.

*Respectfully submitted* this 29th day of October 2018.

*April S. Goodwin*
APRIL S. GOODWIN, ESQ.
The Goodwin Firm
801 West Bay Dr.
Suite 705
Largo, FL 33770
Phone: (727) 316-5333
Email: april@goodwin-firm.com
Attorney for Plaintiff
