IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

ELGIN HILLIARD, SR.

    Plaintiffs,

v.                                                          CASE NO. 1:18-CV-24594

CITY OF HIALEAH, HIALEAH HOUSING
AUTHORITY, and RENE GUTIERREZ,
individually.

    Defendants.

_____

**FIRST AMENDED COMPLAINT**

Plaintiff, ELGIN HILLIARD, SR. sues Defendants, CITY OF HIALEAH, HIALEAH HOUSING AUTHORITY, and RENE GUTIERREZ, individually, jointly and severally, and says:

**Jurisdiction and Venue**

1. This action is brought pursuant to 42 U.S.C. §§1983, 1988, the First, Fourth, and Fourteenth Amendments to the United States Constitution, the Federal Fair Housing Act, the Americans with Disabilities Act, and the tort laws of Florida.

2. Jurisdiction is founded on 28 U.S.C. §§1331, 1343, 42 U.S.C. §1988, the constitutional provisions mentioned above, and under the tort law of Florida. Supplemental jurisdiction, and joinder of parties for additional state law claims is proper pursuant to 28 U.S.C. §1367(a) because they form part of the *same case or controversy*. Plaintiff asserts multiple state tort law claims.

3. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) as all Defendants work and/or reside in this district and all of the acts and omissions giving rise to this action occurred in the City of Hialeah, Florida.

4. In connection with the acts, practices and violations alleged below, Defendants City of Hialeah (hereinafter "City"), Hialeah Housing Authority (hereinafter "HHA"), and Rene Gutierrez

1

("hereinafter "Gutierrez"), have each, either directly or indirectly violated clearly established constitutional rights, as well as statutory and common law duties owed to Plaintiff.

5. All conditions precedent under Florida law for the filing of state law claims have been satisfied.

### Parties

6. Plaintiff Elgin Hilliard, Sr. (hereinafter "Hilliard") at all times material hereto, has been a resident of Miami-Dade County, Florida, over the age of eighteen years and otherwise able to sue in his own capacity.

7. Defendant City of Hialeah, Florida is a municipality duly organized under the laws of the State of Florida. City is the governmental entity responsible, as a matter of law, for the actions of the Hialeah Police Department ("HPD"), its officials, agents and employees, insofar as HPD is an administrative subdivision of the City of Hialeah.

8. Defendant HHA is a public body corporate and was organized and exists under Florida Statute Chapter 421. HHA is responsible for operating the Section 8 Voucher Program in the City of Hialeah pursuant to federal and state law.

9. Defendant Rene Gutierrez is a duly appointed law enforcement officer of the Hialeah Police Department, at all times material hereto acting under color of law, to wit: under the color of statutes, ordinances, regulations, policies, practices, customs and usages of the City of Hialeah, and/or the State of Florida. Defendant Gutierrez is being sued in his individual capacity.

10. At all material times, Defendants City, Gutierrez, and HHA were engaged in unconstitutional activity that was the proximate cause of the violations of Plaintiff's federally protected rights and the damages suffered therefrom.

### General Allegations of Fact

11. Defendants City of Hialeah and Gutierrez violated Plaintiff's constitutional rights under

2

the First, Fourth, and Fourteenth Amendments to the United States Constitution as well as the laws of Florida. It is further alleged that these violations were committed as a result of malice, recklessness, deliberate indifference, and/or plain incompetence Gutierrez and/or pursuant to the policies, practices and/or customs of Defendant City.

12. Defendants City of Hialeah and HHA, violated Plaintiff's constitutional rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution as well as the laws of Florida and the Federal Fair Housing Act. It is further alleged that these violations were committed as a result of malice, recklessness, deliberate indifference, and/or plain incompetence; and/or pursuant to the policies, practices and/or customs of Defendant City.

13. In or about 2014, Hilliard applied for a Section 8 voucher and was placed on the HHA waiting list.

14. In 2015, Hilliard, became disabled after a work accident and often uses a cane for assistance with walking.

15. Due to his disabilities, Hilliard became, and remains to this day, unable to work.

16. On or about April 25, 2016, Hilliard attended a meeting with Margarita De La Cruz, the HHA intake worker assigned to his application, in order to provide Ms. De La Cruz with documents she had requested from him.

17. During this meeting, despite being presented with ample evidence of Hilliard's disabilities, Ms. De La Cruz accused Hilliard of lying about his disability, stating that he was not disabled "in [her] eyes."

18. On or about May 17, 2016, Ms. De La Cruz called Hilliard and asked him to return to the HHA office to provide a letter stating how much money he had received from the settlement of his workers' compensation claim, demanding that he needed to provide this letter within the next few hours.

19. Hilliard, using his cane to walk, arrived at the HHA office with his letter a couple hours later. The HHA employees present included Ms. De La Cruz and Lena Halphen. Also present was on duty Hialeah Police Officer Defendant Rene Gutierrez.

20. Ms. De La Cruz met Hilliard in the lobby, looked over the letter, and immediately accused Hilliard of lying about the amount of the workers' compensation claim settlement, stating, "they said they gave you $25,000.00."

21. Hilliard calmly explained to Ms. De La Cruz the amount he stated in the letter the amount of money he received, after attorney fees and costs.

22. At that time, Hilliard informed Ms. De La Cruz that her recent questions and attitude towards him were making him feel uncomfortable and that he felt she had been giving him a harder time ever since he reported to her that he was disabled and that his income was limited. Ms. De La Cruz then went back into her office alone to review his letter and left Hilliard sitting in the lobby.

23. Hilliard waited in the lobby, quietly watching television, for about 15 minutes, at which time he decided to step outside to stretch as he was feeling stiff from sitting too long due to his arthritis.

24. A few minutes later, Hilliard came back inside the lobby and noticed the television had been turned off. Hilliard politely asked about it being turned off and Ms. Halphen responded rudely, to which Hilliard stated he felt like he was being treated unfairly at that moment, possibly due to his race and/or disability, as on prior occasions he had seen Latino clients catered to regarding the television.

25. Hilliard explained that he was dealing with mental and physical disabilities at the time and asked Ms. Halphen if she could please be more considerate and accommodating to him.

26. After continued rudeness from Ms. Halphen, Hilliard told her he wanted to file a complaint against her for discrimination and harassment.

27. Ms. Halphen gave Plaintiff a complaint form, told him to whom he should address, but stated nothing would be done about it.

28. Ms. Halphen then informed Hilliard she was going to call the police, at which time Gutierrez, who was on duty at HHA, approached Hilliard and instructed him step outside.

29. Hilliard complied, slowly walking outside with Gutierrez as he was using the cane to walk.

30. Hilliard asked Gutierrez what the problem was and Gutierrez replied by accusing Hilliard of being drunk and smoking marijuana, neither of which were true.

31. In fact, Hilliard's subsequent arrest report clearly states Hilliard was *not* under the influence of alcohol or drugs.

32. Hilliard never raised his voice, acted in a threatening manner, or did anything else to give Gutierrez any reason to think that Hilliard was breaking, or would be breaking, any law. Gutierrez simply did not like something Hilliard said to him and/or Ms. Halphen.

33. Once outside, Mr. Hilliard again asked Gutierrez what the problem was. Gutierrez replied by saying he felt threatened by Mr. Hilliard holding his cane in his hand; therefore, Mr. Hilliard placed his cane on the side of the building structure and placed his HHA complaint paperwork on the ground so that Gutierrez could see he had nothing in his hands.

34. Mr. Hilliard's hands were now empty with no objects in them and he further placed both of his hands behind his back and stood in a non-threatening manner to finish his conversation with Gutierrez.

35. For unknown reasons, Gutierrez decided Mr. Hilliard was taking a threatening stance, and told Mr. Hilliard that he was "squaring off against" him.

36. Mr. Hilliard again began asking Gutierrez what the problem was, at which point Gutierrez started to reach toward his hip at which time Mr. Hilliard believed Gutierrez may be

reaching for his gun or Taser.

37. However, instead of brandishing his firearm or Taser, Gutierrez changed his focus to another patron, a Black woman parked in a nearby space, asking her if she and Hilliard were together and if the vehicle belonged to Mr. Hilliard.

38. Mr. Hilliard told Gutierrez that he thought Gutierrez was harassing the woman (who was not with him and who Mr. Hilliard had never met) at which point Gutierrez told Mr. Hilliard to put his hands on the wall and that he was under arrest.

39. Mr. Hilliard yet again complied, even though he knew he had done nothing wrong.

40. As Gutierrez placed Mr. Hilliard's hand behind his back and into handcuffs, he stated to Hilliard, "who is in charge now, boy?" and "you hear those police sirens? You're going to jail now, nigger."

41. At that point, according to Gutierrez's notes, he pulled his Taser and aimed it at Plaintiff.

42. Approximately six (6) to eight (8) Hialeah Police Officers shortly arrived on scene; however, as Mr. Hilliard was complying, it took only one officer to take custody of Mr. Hilliard, place a second set of handcuffs on him, and place him in a squad car.

43. From the squad car, Mr. Hilliard watched and listened as the newly arrived HPD Officers questioned Gutierrez and Ms. Halphen.

44. Mr. Hilliard was never questioned, nor was the woman in her car who witnessed the entire event.

45. While Mr. Hilliard was sitting in the back of the squad car, Gutierrez stood by the back window where. Mr. Hilliard was sitting and continued to harass and threaten him, even spitting in his face.

46. Gutierrez screamed at Mr. Hilliard, "if you show back up on this property that your Black ass will be sorry!"

6

47. Despite Gutierrez knowing that his accusations and assumptions were unfounded, and HPD failing to exercise due diligence in conducting an investigation, Mr. Hilliard was placed under arrest for assault on an officer and disorderly conduct and was also trespassed from HHA property.

48. Mr. Hilliard was in police custody for approximately 16 hours as a result of this incident: approximately 1.5 hours riding in the police car and approximately 14.5 hours in jail, during which he spent the night sleeping on a hard bunk, having to climb up and down off of it for headcounts until he was bonded out by his family.

49. As a direct and proximate result of his wrongful arrest, Mr. Hilliard suffered, and continues to suffer, substantial aggravations and exacerbations of his painful arthritis and depression.

50. On July 14, 2016 the criminal prosecution initiated by Gutierrez was terminated by the prosecuting authority of Miami-Dade County via nolle prosequi.

51. To the extent that Gutierrez was able to, and/or did, understand that his arrest of Hilliard violated clearly established civil rights held by Mr. Hilliard, Gutierrez's actions were guided by the knowledge that he could do so with impunity, and without fear of discipline, oversight, meaningful review and/or scrutiny by City.

52. Upon information and belief, video evidence, which apparently exists despite HPD and HHA's failure to provide it in response to a public records request, would show that at no time did Hilliard threaten or move towards Gutierrez as he claimed in his report. Gutierrez did not have probable cause for an arrest of Mr. Hilliard. He did not, in fact, even have reasonable suspicion of criminal behavior justifying even the briefest of detentions.

53. Gutierrez very plainly, and under the color of law, falsely detained and arrested Mr. Hilliard.

54. On or about June 15, 2016, the Miami-Dade State Attorney's Office decided to not file

formal charges against Mr. Hilliard for the aggravated assault on a police officer due to there being "insufficient evidence" to file formal charges and filed the disorderly conduct charges in county court.

55. However, on or about July 14, 2016, the State Attorney filed a nolle prose in the disorderly conduct case as well.

56. During the course of the Defendant City's employment of Defendant Gutierrez, the City became aware, or should have become aware, of information that Gutierrez was unfit to serve in the capacity of a police officer, that he posed a danger to the public, and that he had repeatedly violated the civil rights of those he was sworn to serve.

57. Upon information and belief, Gutierrez had been accused of violating the constitutional rights of individuals, including individuals who were receiving or seeking services from HHA, prior to May 17, 2016.

58. No matter how egregious Gutierrez behaved, the City did not fire, reprimand, discipline, , counsel, reassign or re-train Gutierrez prior to May 17, 2016, creating a custom or practice of excessive force. Defendants were deliberately indifferent to the Constitutional rights of Mr. Hilliard.

59. On May 24, 2016, HHA further discriminated against Mr. Hilliard by denying his application for Section 8 housing on specious grounds.

60. The stated basis for the denial was "Threatened Abusive Behavior towards PHA Personnel."

61. Mr. Hilliard successfully fought the denial. The hearing officer found the witnesses for HHA to have inconsistent testimony and stated, "the supposed language of Mr. Hilliard was not harsh or verbally abusive than the confirmed sarcastic remarks made from the Hialeah Housing Authority's employee."

62. The impact of the actions of the Hialeah Housing Authority, Gutierrez, and the Hialeah

Police Department on Mr. Hilliard have been significant, to say the least. On June 16, 2016 at 9:00 am, Mr. Hilliard, who has no other criminal record, was arraigned on felony charges of aggravated assault on a law enforcement officer; however, the State Attorney declined to file an information and the charges were dismissed after they reviewed the video recording of the incident.

63. Additionally, on July 13, 2016 at 9:00 am, Mr. Hilliard was arraigned on misdemeanor charges of breach of the peace and, once again, after reviewing the video recording, those charges were summarily dismissed as well.

64. Mr. Hilliard has also suffered an increase in his arthritic pain due to the arrest. His pain medication has been increased three times since the arrest.

65. Additionally, Mr. Hilliard feels less safe in general since the date of the incident. His ability simply to go about his daily life with the sane peace of mind he enjoyed prior to this incident no longer exists.

66. Moreover, Gutierrez violated Mr. Hilliard's constitutionally right to be free from unreasonable seizure, ridiculed him, put him in fear for his safety, even his life, and did so in open public.

67. Since the incident, Mr. Hilliard has needed to avail himself of psychiatric help, and will continue to need to do so in the future to attempt, to address the damage caused by Gutierrez's false arrest and both Gutierrez's and HHA's blatant abuse of authority.

68. As stated above, Mr. Hilliard's application for housing was also wrongfully denied due to this incident and despite the reversal of the denial, he has still not received a response from HHA on his application. In fact, when he types his name in the HHA waiting list database, he receives a response that stating "No Applicant Found." Therefore, Mr. Hilliard has been homeless throughout this process and remains homeless as of today.

69. Finally, because Mr. Hilliard was wrongfully arrested, his car was towed from the HHA

lot, where it was legally parked in a handicapped space at the time of his arrest.

70. Defendant City has been, and continues to be, deliberately indifferent to the promulgation of policies and/or customs insufficient to protect the constitutional rights of the citizenry it is obligated to serve.

71. The City's deliberate indifference, and allowance of deficient City policy and/or custom, created a foreseeable assurance and likelihood that the rights of citizens would become the victims of constitutional violations by Hialeah PD officers and HHA personnel.

72. The injuries suffered by Mr. Hilliard were the result this deliberate indifference in that the failure of City to take meaningful and appropriate action by retraining, discipline, supervision, and/or any other remedial action, in instances where City officers made illegal arrests allowed Defendants' officers to believe they could violate Plaintiff's rights, as set forth herein, with impunity. As such, the deliberate indifference to the rights of citizens by the City was the moving force that resulted in the injury to Mr. Hilliard.

73. The injuries suffered by Mr. Hilliard were the result this deliberate indifference in that the failure of HHA to take meaningful and appropriate action by retraining, discipline, supervision, and/or any other remedial action, in instances where HHA employees made illegal arrests allowed Defendants' employees to believe they could violate Plaintiff's rights, as set forth herein, with impunity. As such, the deliberate indifference to the rights of citizens by HHA was the moving force that resulted in the injury to Mr. Hilliard.

74. and HHA personnel made arbitrary and discriminatory decisions regarding citizens who applied for housing,

75. Plaintiff has retained the Goodwin Firm to represent him in this matter and has agreed to pay a reasonable fee for this representation.

## COUNT I
## FALSE ARREST AND/OR IMPRISONMENT – 42 U.S.C. §1983 CLAIM
### (DEFENDANT CITY)

76. Plaintiff hereby incorporates paragraphs 1- 75 above as if specifically set forth herein.

77. Defendant City is responsible for the conduct of its police Officers who are acting in the course and scope of their employment.

78. On May 17, 2016, Plaintiff was arrested by Defendant Gutierrez, a Hialeah police officer who was acting in the course and scope of his duties as a police officer.

79. Such seizure physically deprived Mr. Hilliard of his freedom and liberty.

80. The restraint and arrest of Mr. Hilliard was unlawful and unreasonable in that it was not based upon lawfully issued process of Court.

81. As a result of the actions of Defendant Gutierrez, for which Defendant City is responsible, Plaintiff suffered damages.

82. Pursuant to Fla. Stat. § 768.28(9)(a), the City is not "liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting willful and wanton disregard of human rights, safety or property."

83. As permitted by Fed. R. Civ. P. 8(d), in the alternative to the contrary allegations set forth in this Complaint, Plaintiff alleges that Defendant Gutierrez committed the tort of false arrest, but not in bad faith or with malicious purpose, nor in a manner exhibiting willful and wanton disregard of human rights, safety, or property.

84. Vicarious liability should be imposed on the City for the Defendant Gutierrez's acts of false arrest to the extent allowed by law.

85. Pursuant to §768.28, Florida Statutes, Plaintiff notified City of this claim prior to filing this action and said claim was not resolved.

WHEREFORE, Plaintiff respectfully requests this Court to award (a) reasonable and appropriate compensatory damages (b) Plaintiff's costs, expenses and reasonable attorney's fees, and such other and further relief as this Court deems necessary and proper.

**COUNT II**
**FALSE ARREST AND/OR IMPRISONMENT - STATE TORT CLAIM**
**(DEFENDANT GUTIERREZ)**

86. Plaintiffs hereby incorporate paragraphs 1- 75 above as if specifically set forth herein.

87. On or about May 17, 2016, Defendant Gutierrez did unlawfully detain and/or seize Elgin Hilliard, Sr. by unlawfully restraining his movement and freedom while acting under the color of law.

88. The unlawful arrest of Mr. Hilliard was the result of the plain incompetence of Gutierrez while acting within the course and scope of his employment, and pursuant to the discretionary authority vested in him by the City.

89. As specifically set forth above the illegal arrest and false imprisonment stem from actions by Gutierrez which were malicious, taken in bad faith, and/or with willful disregard for Mr. Hilliard's rights and well-being.

90. As a direct and proximate cause of the illegal detention, and Mr. Hilliard's attempt to avoid same, he suffered financial loss in the form of attorney's fees, bail and other costs, loss of freedom by incarceration, physical injury by electrical shock, embarrassment and indignity, humiliation and/or emotional injury leading to interference with his enjoyment of life, including his continued homelessness, stress, anxiety, and depression.

**WHEREFORE**, Plaintiff requests this Court enter judgment against Defendant Gutierrez individually, and award Plaintiff compensatory and punitive damages, attorney's fees and costs, as well as all other further relief this Court deems just and proper.

**COUNT III**
**EXCESSIVE USE OF FORCE**
**(DEFENDANTS CITY AND GUTIERREZ)**

91. Plaintiffs hereby incorporate paragraphs 1-75 above, as if specifically set forth herein.

92. This cause of action is brought by Plaintiff against Defendant City and Defendant Gutierrez for the excessive use of force under color of law that deprived Plaintiff of his rights under the Fourth Amendment to the United States Constitution.

93. Without legal cause or justification, Defendant Gutierrea used physical force against Plaintiff that was excessive, unnecessary, and unreasonable in violation of the Fourth Amendments to the United States Constitution.

94. As a direct and proximate result of Gutierrez's actions, Plaintiff suffered damages.

WHEREFORE, Plaintiff respectfully requests this Court to award (a) reasonable and appropriate compensatory damages against Defendants (b) punitive damages against Defendant Gutierrez only, (c) Plaintiff's costs, expenses and reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and (d) such other and further relief as this Court deems necessary and proper.

**COUNT IV**
**NEGLIGENT SUPERVISION AND RETENTION**
**(DEFENDANT CITY)**

95. Plaintiff incorporates paragraphs 1-75 above, as if specifically set forth herein.

96. City has a duty to protect individuals from the acts of false arrest and excessive force by the police officers the City employs.

97. During the course of the City's employment of Defendant Gutierrez, the City knew or had reason to know that Gutierrez had a history of misconduct indicating that he was unfit to serve as a police officer; that he had a history of committing civil rights violations involving excessive force, battery, and false arrest; and, that he posed a danger to the public.

98. City breached its duty of reasonable care by: a) retaining Defendant Gutierrez as a

police officer; b) failing to discipline Defendant Gutierrez for committing acts of misconduct including excessive force and false arrest against members of the public; c) failing to train and/or retrain Defendant Gutierrez; and d) failing to reassign Gutierrez to a position where he would not pose a threat to the public; e) failing to properly supervise and counsel Gutierrez.

99. As a direct and proximate cause of the wrongful acts and omissions of the Defendant City, Plaintiff suffered damages.

WHEREFORE, Plaintiff respectfully requests this Court to award (a) reasonable and appropriate compensatory damages, (b) Plaintiff's costs, expenses and reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and (c) such other and further relief as this Court deems necessary and proper.

## COUNT V
## 42 U.S.C. §1983 FIRST AND FOURTEENTH AMENDMENT VIOLATION FOR RETALIATION
## (DEFENDANTS CITY AND GUTIERREZ)

100. Plaintiff incorporates paragraphs 1-75 above, as if specifically set forth herein.

101. While Defendant Gutierrez was acting under color of law as a police officer for the City of Hialeah, he deprived Mr. Hilliard of rights secured to him under the First Amendment to the United States Constitution.

102. Defendant Gutierrez unlawfully and without probable cause arrested Plaintiff and subjected him to unnecessary force. Such actions by Defendant Gutierrez were taken in retaliation for Plaintiff's lawful exercise of his rights under the First Amendment when he spoke to Defendant Gutierrez and HHA employees and he retaliated by falsely arresting Mr. Hilliard.

103. The conduct of Defendant Gutierrez violated Plaintiff's clearly established right to free speech as guaranteed by the First and Fourteenth Amendments to the Constitution of the United States and for which 42 U.S.C. § 1983 provides a remedy.

WHEREFORE, Plaintiff respectfully requests this Court to award (a) reasonable and appropriate compensatory damages (b) punitive damages against Defendant Gutierrez, (c) Plaintiff's costs, expenses and attorney's reasonable fees pursuant to 42 U.S.C. § 1988, and (d) such other and further relief as this Court deems necessary and proper.

**COUNT VI**
**42 U.S.C. §1983 FIRST AND FOURTEENTH AMENDMENT VIOLATION FOR RETALIATION**
**(DEFENDANT HIALEAH HOUSING AUTHORITY)**

104.  Plaintiff incorporates paragraphs 1-75 above, as if specifically set forth herein.

105.  Defendant HHA deprived Mr. Hilliard of rights secured to him under the First Amendment to the United States Constitution.

106.  Defendant HHA unlawfully rejected Plaintiff's housing application. Such action by Defendant HHA was taken in retaliation for Plaintiff's lawful exercise of his rights under the First Amendment when he spoke to HHA employees and HHA retaliated by unlawfully rejecting Mr. Hilliard's housing application.

107.  The conduct of Defendant HHA violated Plaintiff's clearly established right to free speech as guaranteed by the First and Fourteenth Amendments to the Constitution of the United States and for which 42 U.S.C. § 1983 provides a remedy.

WHEREFORE, Plaintiff respectfully requests this Court to award (a) reasonable and appropriate compensatory damages (b) punitive damages against Defendant HHA, (c) Plaintiff's costs, expenses and reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and (d) such other and further relief as this Court deems necessary and proper.

**COUNT VII**
**VIOLATION OF 42 U.S.C. §1983**
**(DEFENDANT HIALEAH HOUSING AUTHORITY)**

108.  Plaintiff incorporates paragraphs 1-75 above, as if specifically set forth herein.
.

109. HHA's decision to terminate Plaintiff's participation in Section 8 Program violates the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States, 42 U.S.C. § 1437d(k), 1437f(o)(20)(D)(I), 24 C.F.R. § 982.553(c), and 24 C.F.R. § 982.555(e)(6).

110. In order to deny an applicant based on alleged criminal activity, HHA bears the burden to ultimately prove that Plaintiff engaged in criminal activity by a preponderance of the evidence. *Basco v. Machin*, 514 F.3d 1177, 1182 (11th Cir. 2008).

111. HHA has ignored the ruling of its own hearing officer and continued to deny Plaintiff his right to receive equal treatment by HHA.

112. HHA's termination of Plaintiff's participation in the Section 8 Program violates his right to due process of law under the Fourteenth Amendment of the United States Constitution, and the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437d(k) and 1437f(o)(20)(D)(I) , and the applicable federal regulations found at 24 C.F.R. § 982.553(c) and 24 C.F.R. § 982.555(e)(6).

113. Plaintiff was, and continues to be, deprived of a federal right by Defendants, acting under color of state law, in that HHA terminated his participation in the Section 8 program although it lacked any probative evidence that he engaged in criminal activity in violation of his right to due process of law under the Fourteenth Amendment of the United States Constitution, the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437d(k), 1437f(o)(20)(D)(I), and the applicable federal regulations found at 24 C.F.R. § 982.553(c) and 24 C.F.R. § 982.555(e)(6), and she therefore has a cognizable claim under 42 U.S.C. §1983.

114. Plaintiff has suffered damages by remaining homeless for over two years since the incident.

WHEREFORE, Plaintiff requests this Court enter judgment against Defendant City of Hialeah, and award Plaintiff compensatory damages, attorney's fees and costs, as well as all other further relief this Court deems just and proper.

## COUNT VIII
## RETALIATION UNDER THE FEDERAL FAIR HOUSING ACT
## (DEFENDANTS HIALEAH HOUSING AUTHORITY)

115. Plaintiff incorporates paragraphs 1-75 above, as if specifically set forth herein.

116. The Fair Housing Act, 42 U.S.C. § 3617, et seq., and the Florida Fair Housing Act, § 760.37, et seq, are interpreted in pari materia. All make it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise of, or on account of his having exercised, or on account of his having aided or encouraged any other person in the exercise of any fair housing right.

117. The retaliation provisions of the Fair Housing Acts have been broadly applied to reach all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws.

118. The denial of Plaintiff's application based on obviously mischaracterized evidence appears to be pretextual and violates the Fair Housing Act's prohibition against retaliatory conduct.

119. The actions of Defendants were for the purpose of coercing, intimidating, threatening, or interfering with Plaintiff's exercise of his fair housing rights.

120. As a result of Defendants' retaliatory conduct, Plaintiff has suffered from homelessness, embarrassment and indignity, humiliation and/or emotional injury leading to interference with his enjoyment of life, including continued homelessness, depression, stress, anxiety, and loss of sleep.

WHEREFORE, Plaintiff demands judgment and relief for his tangible and intangible damages, compensatory damages, punitive damages, attorney's fees, costs for prosecuting these matters, and any such further relief as this Court deems just and equitable against Defendants.

### Trial by Jury

121. Plaintiff demands trial by jury for all issues so triable by right.

*Respectfully submitted* this 14th day of March 2019.

*April S. Goodwin*

        APRIL S. GOODWIN, ESQ.
        The Goodwin Firm
        801 West Bay Dr.
        Suite 705
        Largo, FL 33770
        Phone: (727) 316-5333
        Email: april@goodwin-firm.com
        Attorney for Plaintiff