**ELGIN HILLIARD, SR.**,

    Plaintiff,

v.

**CITY OF HIALEAH**, *et al.*,

    Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant Hialeah Housing Authority's Motion for Summary Judgment [ECF No. 85], filed November 30, 2019. Plaintiff, Elgin Hilliard, Sr., filed a Response [ECF No. 89], to which Defendant filed a Reply [ECF No. 102]. The Court has carefully considered the Second Amended Complaint ("SAC") [ECF No. 68], the parties' written submissions,[1] the record, and applicable law. For the following reasons, the Motion is granted in part and denied in part.

### I. BACKGROUND

This action arises from Plaintiff's detention and the subsequent denial of his Section 8 voucher application. (*See generally* SAC). Plaintiff is a resident of Miami-Dade County. (*See id.*

---

[1] The parties' factual submissions include: Defendant's Statement of Undisputed Facts ("Def.'s Facts"), submitted as part of its Motion (*see* Mot. 1–5); Plaintiff's Response to Defendant's Statement of Material Facts and Plaintiff's Affirmative Statement of Material Facts ("Pl.'s Facts") [ECF No. 90]; Defendant's Response to Plaintiff's Affirmative Statement of Material Facts ("Def.'s Reply Facts") [ECF No. 100]; Defendant's Appendix of Exhibits and attached exhibits ("Mot. Exs.") [ECF No. 86], filed separately in support of its Motion; and Plaintiff's compilation of exhibits ("Resp. Exs.") [ECF No. 91], filed separately in support of his Response.

¶ 6). The Hialeah Housing Authority ("Defendant" or "HHA") is a public agency in the City of Hialeah. (*See id.* ¶ 7).

Plaintiff suffered an accident in 2015, leaving him unable to work and requiring the use of a walking cane. (*See* SAC ¶¶ 13–14). In June 2014, Plaintiff applied for a Section 8 voucher and was placed on the waiting list. (*See* Def.'s Facts ¶ 1).

On April 18, 2016, Defendant wrote to Plaintiff scheduling an appointment for his Section 8 application for April 25, 2016 and asking him to bring, among other things, documentation substantiating his income and expenses. (*See* Mot. Exs., Ex. B, Apr. 18, 2016 Correspondence [ECF No. 86-2]; Def.'s Facts ¶ 2). At the appointment, Plaintiff's caseworker, Margarita De La Cruz, requested additional documentation. (*See* Def.'s Facts ¶¶ 2–3).

On May 17, 2016, Plaintiff returned to the HHA office with the additional documentation. (Def.'s Facts ¶ 3). De La Cruz reviewed the documentation with the Assistant Section 8 Director Yvette Garcia. (*See id.* ¶¶ 5, 18). After review, De La Cruz told Plaintiff he needed to supplement the documentation further to clarify how he was meeting his expenses. (*See id.* ¶ 5). Plaintiff became upset and accused De La Cruz and the receptionist, Ledya Halphen, of discrimination. (*See id.* ¶ 6).

Defendant acknowledges "the exact nature of the exchange between Plaintiff and the HHA employees is disputed[.]" (Def.'s Facts ¶ 7 (alteration added)). De La Cruz and Halphen reported to Garcia that Plaintiff was acting belligerent and threatening. (*See id.*; Mot. Exs., Ex. E, Garcia Dep. [ECF No. 86-5] 28:16–19). Defendant asserts Plaintiff made threatening statements to De La Cruz and Halphen (*see* Def.'s Reply Facts ¶ 30), while Plaintiff claims he did not (*see* Pl.'s Facts ¶ 7). Plaintiff admits he raised his cane while speaking to them but denies raising it in the manner De La Cruz described. (*See* Pl.'s Facts ¶ 7).

The HHA employees called Officer Rene Gutierrez, a retired police officer employed by Defendant, who arrived in the lobby shortly thereafter. (*See* Def.'s Facts ¶ 9). Officer Gutierrez asked Plaintiff to step outside to speak with him. (*See id.*). Once outside, Plaintiff, who was holding his cane, began asking Officer Gutierrez what he wanted and why he had asked him to come outside.[2] (*See id.* ¶ 11). Plaintiff then put his cane down and assumed what Officer Gutierrez believed to be a combative, "squaring" stance. (*Id.* ¶ 13). Officer Gutierrez reached for his taser at one point during the encounter but never pulled it out from its holster. (*See id.* ¶ 15). Plaintiff was arrested and charged with disorderly conduct and assault of a law enforcement officer (*see id.* ¶ 14), but the charges were dropped (*see* Pl.'s Facts ¶ 36).

On May 24, 2016, Defendant wrote to Plaintiff advising his Section 8 application had been denied due to "threatening and abusive behavior toward HHA personnel." (Mot. Exs., Ex. G, Denial Letter [ECF No. 86-7]). Garcia made the decision to deny Plaintiff's application. (*See* Def.'s Facts ¶ 18). The parties dispute the reason for the denial of Plaintiff's application. (*See id.* ¶ 22; Pl.'s Facts ¶¶ 22, 26–27; Def.'s Reply Facts ¶¶ 26–27).

Plaintiff asserts "there was no other reason his application was denied other than his statements to HHA employees." (Pl.'s Facts ¶ 22). To support this assertion, Plaintiff cites De La Cruz's deposition testimony, in which she stated, "[W]hen I completed the file that I submitted to review, I didn't see anything negative to interfere or deny his case." (Resp. Exs., Ex. E, De La Cruz Dep. 83:11–14; *see also* Pl.'s Facts ¶ 22).

Defendant urges a "holistic reading of the surrounding testimony." (Def.'s Reply Facts ¶ 26). De La Cruz testified that for his application to be approved, Plaintiff would have been

---

[2] Although Defendant states it is not a material fact for purposes of summary judgment (*see* Def.'s Reply Facts ¶ 35), the parties dispute whether Plaintiff raised his cane toward Officer Gutierrez or threatened him in any manner (*see* Pl.'s Facts ¶ 35; Def.'s Reply Facts ¶ 35).

required to report any extra income. (*See* Mot. Exs., Ex. D, De La Cruz Dep. [ECF No. 86-4] 83:8–25; 84:1–2). De La Cruz also testified Plaintiff never provided the additional documentation she had requested about his income, but his application would have been approved if he had done so and the incident between Plaintiff and the HHA employees had not occurred. (*See id.* 101:6–17). Defendant asserts De La Cruz's testimony shows "Plaintiff's case was trending towards being closed due to misrepresentation [of his income] prior to his alleged threatening of HHA employees and subsequent arrest." (Def.'s Reply Facts ¶ 26 (alteration added)).

The denial letter also informed Plaintiff of the right to request an informal review of the decision to deny his Section 8 application. (*See* Def.'s Facts ¶ 19). On August 11, 2016, an informal hearing was held. (*See id.* ¶ 20). On August 17, 2016, the hearing officer overturned the decision to deny Plaintiff's application. (*See* Mot. Exs., Ex. H, Notice of Decision [ECF No. 86-8] 1).[3] Plaintiff's application was not reinstated (*see* Pl.'s Facts ¶ 28), nor did Plaintiff undertake any efforts to reinstate the application (*see* Def.'s Reply Facts ¶ 28).

On April 15, 2019, Plaintiff filed his Second Amended Complaint, asserting five claims against Defendant.[4] Count I, styled as a claim brought under 42 U.S.C. section 1983, alleges

---

[3] Plaintiff asserts he felt he could no longer complain of discrimination by Defendant after the denial of his application was overturned (*see* Pl.'s Facts ¶ 24), citing his verification (*see* Resp. Exs., Ex. A, 3–6). The verification does not contain facts supporting Plaintiff's assertion. (*See* Resp. Exs., Ex. A, 3–6). Page 3 is the exhibit's cover page; page 4 is the signature page of the verification and contains three paragraphs numbered 34, 35, and 36, as well as part of a preceding paragraph that appears to have been cut off; page 5 contains the details of Plaintiff's e-signature; and page 6 is a screenshot of the HHA website. (*See id.*).

[4] Plaintiff filed his original Complaint [ECF No. 1] on November 1, 2018, against the City of Hialeah, the Hialeah Police Department, Sergio Velazquez, the HHA, Maida Gutierrez, and Rene Gutierrez. Plaintiff then voluntarily dismissed the Hialeah Police Department. (*See* Notice of Voluntary Dismissal [ECF No. 32]). Following the remaining Defendants' Motion to Dismiss [ECF No. 41], Plaintiff voluntarily dismissed Sergio Velazquez and Maida Gutierrez (*see* Notice of Voluntary Dismissal [ECF No. 50]) and filed his First Amended Complaint [ECF No. 49]. Upon the City of Hialeah's subsequent Motion to Dismiss [ECF No. 56], Plaintiff voluntarily dismissed the City of Hialeah (*see* Notice of Voluntary Dismissal [ECF No. 67]) and filed the Second Amended Complaint.

Officer Gutierrez "committed the tort of false arrest" against Plaintiff, and Defendant should be held vicariously liable for Officer Gutierrez's actions. (SAC ¶¶ 75–82). Count III alleges Officer Gutierrez used excessive force against Plaintiff in violation of the Fourth Amendment.[5] (*See id.* ¶¶ 88–91). Count V alleges Defendant retaliated against Plaintiff in violation of the First and Fourteenth Amendments. (*See id.* ¶¶ 96–99). Count VI alleges Defendant deprived Plaintiff of due process under the Fourteenth Amendment and violated the Housing Act of 1937, 42 U.S.C. sections 1437 *et seq.*, and the Act's implementing regulations. (*See id.* ¶¶ 100–06). Count VII alleges Defendant retaliated against Plaintiff in violation of the Fair Housing Act ("FHA"), 42 U.S.C. sections 3601 *et seq*. (*See id.* ¶¶ 107–12). Defendant moves for summary judgment on these counts. (*See generally* Mot.).

## II.  LEGAL STANDARD

Summary judgment may only be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court draws all reasonable inferences in favor

---

Officer Gutierrez was dismissed without prejudice on February 1, 2019. (*See* Order [ECF No. 29]). After Gutierrez had been dismissed from the action, in the Second Amended Complaint Plaintiff added Officer Gutierrez as a Defendant and asserted several claims against him. (*See* Return of Non-Service [ECF No. 73]; Apr. 25, 2019 Order [ECF No. 74]). Because Plaintiff has never served Officer Gutierrez nor sought leave to add him as a party to the case beyond the deadline contained in the Scheduling Order [ECF No. 46], he will once again be dismissed without prejudice.

[5] In his Response, Plaintiff purports to "voluntarily dismiss[ ]" Count III. (Resp. 4). Defendant thus is entitled to summary judgment on this claim.

of the party opposing summary judgment. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

If the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim, and (2) showing the Court there is insufficient evidence to support the non-moving party's case. *See Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-14209-Civ, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015) (citations omitted). "Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite to . . . materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute." *Id*. (citing Fed. R. Civ. P. 56(c)(1); alteration added; internal quotation marks omitted).

"Summary judgment may be inappropriate even where the parties agree on the basic facts [] but disagree about the inferences that should be drawn from these facts." *Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-cv-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (alteration added; citation omitted). Where "reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment" and proceed to trial. *Id.* (citations omitted).

## III. DISCUSSION

### A. Count I: False Arrest and/or Imprisonment

Defendant argues it is entitled to summary judgment on Count I because it cannot be held vicariously liable under section 1983 as a matter of law. (*See* Mot. 7–8). Plaintiff admits Defendant "may not be held vicariously liable for constitutional violations brought pursuant to [section] 1983[.]" (Resp. 3 (alterations added)). Nevertheless, he states Defendant should be held

vicariously liable for Officer Gutierrez's actions under Florida law. (*See id.* 3–4). In response to this creative argument, Defendant points out Count I "is clearly brought pursuant to 42 U.S.C. [section] 1983, not Florida law," and the Court should reject Plaintiff's "attempt[ ] to inject an additional claim against [Defendant] where one does not exist." (Reply 2 (alterations added)).

Throughout the litigation, Plaintiff has taken the position Count I states a section 1983 claim, not a tort claim under Florida law. In the Second Amended Complaint, Count I is styled as a section 1983 claim (*see* SAC 10),[6] even though the substance of the claim mentions "the tort of false arrest" (*id.* ¶ 81).

Plaintiff offers no rebuttal to Defendant's assertion Count I is brought under section 1983. (*See* Resp. 3). Indeed, Plaintiff references the Fourth Amendment's probable cause requirement and argues summary judgment should be denied because Defendant "does not raise the issue of probable cause and has not disputed any of the facts surrounding Plaintiff's detention by Officer Gutierrez." (*Id.* 3–4). Further evidencing what his claim is in Count I, in his Statement of the Case in the parties' Joint Pretrial Stipulation [ECF No. 98], Plaintiff writes, "This is an action for violations of 42 U.S.C. [sections] 1983, 1988, the First, Fourth, and Fourteenth Amendments to the United States Constitution, the Federal Fair Housing Act, and a Florida state law claim of false arrest." (*Id.* at 1 (alteration added)). The Fourth Amendment claim can only refer to Count I, and the "Florida state law claim of false arrest" appears to refer to Count II (which is against the never-served Officer Gutierrez and is not addressed in the Motion).

If by his statement in the Response Plaintiff intends to convert Count I into a tort claim, he is prohibited from doing so. "A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment" and must instead "amend the complaint in accordance with

---

[6] Count I is titled "False Arrest and/or Imprisonment – 42 U.S.C. [section] 1983 Claim." (SAC 10 (alteration added; capitalization omitted)).

[Federal Rule of Civil Procedure] 15(a)." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (alterations added; citation omitted); *see also Porto Venezia Condo. Ass'n, Inc. v. WB Fort Lauderdale, LLC*, No. 11-60665-Civ, 2012 WL 12840923, at *3 n.2 (S.D. Fla. Oct. 22, 2012) (stating the plaintiff's attempt to characterize a claim as a different state tort claim in his response to the defendant's motion for summary judgment was improper and declining to allow the plaintiff to amend his complaint at late stage of the litigation). As if the foregoing observations were not enough reason to reject Plaintiff's attempt at an amendment, in April 2019, the Court ordered Plaintiff may not make further amendments following the Second Amended Complaint. (*See* Apr. 12, 2019 Order [ECF No. 66] 1).

Defendant is correct it is not subject to vicarious liability for a claim brought under section 1983. (*See* Mot. 7–8). Plaintiff may not import state tort law's vicarious liability doctrine to the section 1983 context. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable under [section] 1983 on a *respondeat superior* theory." (alterations added)).

Plaintiff nevertheless raises other arguments summary judgment should be denied on Count I. Plaintiff states Defendant "does not raise the issue of probable cause and has not disputed any of the facts surrounding Plaintiff's detention by Officer Gutierrez." (Resp. 3–4). Defendant does not address the merits of the alleged constitutional violation in its Motion or Reply. (*See generally* Mot.; Reply). Plaintiff also attempts to show Defendant had an unofficial policy of detaining disruptive applicants, as he is required to do to prevail under section 1983 (*see* Resp. 8–9), which Defendant refutes (*see* Mot. 15–17; Reply 9–11). The Court discusses the parties' section 1983 arguments in further detail below.

**B. Counts I, V, and VI: Municipal Liability under Section 1983**

Counts I, V, and VI raise section 1983 claims. Defendant argues summary judgment is appropriate on two grounds. First, Defendant states no substantive violations occurred as to Counts V and VI, as Plaintiff cannot point to evidence showing Defendant retaliated against him based on his exercise of free speech or that Defendant denied his Section 8 application based on insufficient evidence. (*See* Mot. 9–13). Second, Defendant argues even if there is a question of fact as to whether Plaintiff's constitutional rights were violated, Defendant is still entitled to summary judgment because Plaintiff fails to show a custom or practice or a final policymaker's decision was the moving force behind Plaintiff's alleged injuries. (*See id.* at 15–17).

Plaintiff fails to submit any evidence as to Defendant's section 1983 liability with respect to Count VI. (*See generally* Resp.). Plaintiff does not attempt to show Defendant had a practice of rejecting housing voucher applications without due process or in violation of the Housing Act or its implementing regulations. Nor does Plaintiff make any other argument Defendant should be liable in Count VI under section 1983. Plaintiff fails to show a genuine dispute of material fact, and so summary judgment is appropriate on this claim without further discussion. Moving on, as to Counts I and V Plaintiff does insist Defendant "has a widespread pattern and practice of requesting its resident law enforcement officer to detain applicants and residents its employees deem to be disruptive" and of "denying the applications of applicants for issues related to free speech." (Resp. 9).

Section 1983 provides a cause of action against state actors who, under color of state law, deprive a person of rights secured by federal law. *See* 42 U.S.C. § 1983. "The Supreme Court has placed strict limitations on municipal liability under [section] 1983." *Grech v. Clayton Cty. Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (alteration added). As stated, a municipal entity like

Defendant cannot be held liable under section 1983 based on the doctrine of *respondeat superior*. *See Monell*, 436 U.S. at 691; *Grech*, 335 F.3d at 1329. Instead, municipal entities may be held liable only if the constitutional violations result from (1) "an official government policy"; (2) "a custom or practice so pervasive and well-settled that it assumes the force of law"; or (3) "the actions of an official fairly deemed to represent government policy." *Denno v. Sch. Bd. of Volusia Cty., Fla.*, 218 F.3d 1267, 1276 (11th Cir. 2000) (citations omitted). This requirement "was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original).

    *1. Unconstitutional Policy or Custom*

In order to establish a municipal entity's policy, a plaintiff must identify either (1) an officially promulgated municipal policy or (2) an unofficial custom or practice of the municipal entity shown through the repeated acts of a final policymaker for the entity. *See Grech*, 335 F.3d at 1329 (citing *Monell*, 436 U.S. at 690–91, 694; other citations omitted). "Because a [municipal entity] rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs" must demonstrate the latter. *Id.* at 1330 (alteration added; citations omitted). "Under either avenue, a plaintiff . . . must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue." *Id.* (alteration added; citations omitted).

To prove a municipal entity maintained an unconstitutional policy or custom, a plaintiff may submit circumstantial evidence of an ongoing pattern of constitutional violations that the government did nothing to remedy. *See Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1556 (11th Cir. 1989) (citing *City of Canton v. Harris*, 489 U.S. 378 (1989)). The custom must be so

widespread it has the effect of a written policy. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (noting the challenged custom or practice must be "widespread" and "so permanent and well settled as to constitute a custom or usage with the force of law" (internal quotation marks and citation omitted)); *Denno*, 218 F.3d at 1277 (noting the custom or practice must be so widespread the city was constructively aware of it or had actual knowledge of the wrongdoing (citation omitted)).

According to Plaintiff, Defendant "has a widespread pattern and practice of requesting its resident law enforcement officer to detain applicants and residents its employees deem to be disruptive" and of "denying the applications of applicants for issues related to free speech." (Resp. 9). Plaintiff asserts "[t]he issue of whether a custom or practice is widespread is a question of fact and in this matter that fact is disputed." (*Id.* (alteration added)). Defendant explains the record evidence Plaintiff cites for his argument fails to create a genuine issue of fact. (Reply 9–10). The Court agrees with Defendant.

Plaintiff's evidence falls well short of showing Defendant had an unofficial policy or policies that were the moving force behind the alleged constitutional violations. As an initial matter, Plaintiff fails to identify an official with final policymaking authority whose "repeated acts" demonstrate the existence of the alleged policies. *See Grech*, 335 F.3d at 1329 (citing *Monell*, 436 U.S. at 690–91, 694; other citations omitted). Instead, Plaintiff focuses on the purported pattern of violations in an attempt to show it was "so permanent and well settled as to constitute a custom or usage with the force of law." *Praprotnik*, 485 U.S. at 127 (internal quotation marks and citation omitted).

For both alleged practices, Plaintiff offers a compilation of spreadsheets of terminated housing voucher applicants and a table of complaints submitted to the Florida Commission on

Human Relations ("FCHR") (*see* Resp. Exs, Ex. D, 127–3000; *see also* Pl.'s Facts ¶¶ 31–32). Plaintiff also cites Garcia's testimony that officers are summoned about two or three times per year to "handle an applicant or a resident" who "becomes belligerent or hostile or threatening" to show Defendant had a custom of detaining disruptive applicants. (Resp. Exs., Ex. F, Garcia Dep. 35:18–24; *see also* Pl.'s Facts ¶ 31). Contrary to Plaintiff's contention, this evidence fails to create a genuine dispute of fact as to whether Defendant tolerated a widespread practice or custom that caused either of the alleged constitutional violations.[7]

Garcia's testimony is insufficient to demonstrate Defendant had a custom of requesting its officers to detain disruptive applicants in violation of the Fourth Amendment. When asked how often Officer Gutierrez was summoned to handle a disruptive applicant, Garcia responded, "Not very often. It could be two, three times in a year." (Resp. Exs., Ex. F, Garcia Dep. 35:18–22). This vague testimony is surely not enough to create a genuine dispute of fact.

Plaintiff must to point to specific instances where applicants were detained by HHA officers under similar factual circumstances and explain how any prior detentions by HHA officers violated the Fourth Amendment. Plaintiff fails to do so. *See Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998) (requiring the plaintiff to present evidence of prior incidents of constitutional violations that occurred in the same manner that caused plaintiff's injury); *Khoury v. Miami-Dade Cty. Sch. Bd.*, No. 16-20680-Civ, 2018 WL 1472473, at *7 (S.D. Fla. Mar. 26, 2018) (granting summary judgment where the plaintiff failed to demonstrate a widespread practice of School Board police improperly relying on the Baker Act in violation of the Fourth Amendment to detain individuals because she did not show past detentions were unlawful (citing *Gold*, 151

---

[7] Plaintiff relies entirely on *Griffin v. City of Opa-Locka*, 261 F.3d 1295 (11th Cir. 2001), for this argument. (*See* Resp. 8–9). But Plaintiff provides no meaningful analysis of *Griffin* and fails to explain how this case supports his conclusory assertions.

F.3d at 1351)); *see also Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) (affirming district court where the plaintiff could not show the other incidents appearing in "a list of all cases involving excessive force" involved "factual situations substantially similar to the case at hand").[8]

Similarly, Exhibit D — the sole piece of evidence on which Plaintiff relies — is insufficient to demonstrate Defendant's alleged custom of denying applications in retaliation against speech. Defendant aptly describes Exhibit D as "several thousand pages of irrelevant documents which abjectly fail to provide support whatsoever for Plaintiff's assertion of a widespread pattern and practice." (Reply 10). Defendant states Exhibit D cannot "suffice to create an issue of fact on this question" because Plaintiff's reference to this exhibit "without any specific citations or explanation offer[s] no support for Plaintiff's conclusory allegation[.]" (*Id.* (alterations added)).

Defendant is largely correct. In relevant part, Exhibit D appears to contain two spreadsheets of terminated housing voucher applicants.[9] (*See* Resp. Exs., Ex. D, 127–3000). The last columns on pages 1562 to 2996 and on pages 2999 to 3000 of Plaintiff's submission reflect the reasons for each application denial.[10] (*See id.* at 1562–2996; 2999–3000). But "the number

---

[8] Plaintiff cites the compilation of spreadsheets to show a practice of detaining applicants. (*See* Pl.'s Facts ¶ 31). Exhibit D does not appear to reflect such a practice, and Plaintiff provides no explanation as to its relevance. (*See* Resp. 8–9; Pl.'s Facts ¶¶ 31–32). According to the Appendix of Plaintiff's submission (*see* Resp. Exs. 2), Exhibit D shows terminated voucher applicants and complaints submitted to the FCHR but mentions nothing about applicants who were detained, let alone applicants who were detained in violation of the Fourth Amendment.

[9] Exhibit D contains a table of four complaints submitted to the FCHR — another facially unrelated piece of evidence. (*See* Resp. Exs., Ex. D, 3001). Plaintiff does not explain how the table of FCHR complaints is relevant to Defendant's alleged custom of denying housing voucher applications in retaliation for speech. Three of the four complaints appear to be about discrimination, not First Amendment retaliation. (*See id.*). The last complaint is described as "INQUIRY No. 557489 – 2018," and there is no indication it is related to First Amendment retaliation either. (*See id.*).

[10] It is also difficult to glean the relevant information from the spreadsheets because of the way they are structured. Neither spreadsheet is titled. (*See* Resp. Exs., Ex. D, 127–2996; *see also id.* at 2997–3000). Pages 127 to 1561 contain 14 columns, while pages 1562 to 2996 contain three more columns that

of [denials] bears no relation to their validity." *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (alteration added) (reversing jury verdict for the plaintiff on a *Monell* claim where the plaintiff produced no evidence that past complaints of police misconduct had merit).

Without explanations of the context behind each application denial or specific references to any applications that were denied for retaliatory reasons, Plaintiff cannot demonstrate a widespread practice of denying applications in retaliation against speech. *See Gold*, 151 F.3d at 1351 (finding the plaintiff could not show the City had a custom of effecting false arrests for disorderly conduct because, although he submitted evidence of over 8,000 disorderly conduct arrests, he did not provide the reasons for the dismissals of past disorderly conduct arrests or any pattern of complaints for false arrests under disorderly conduct statute); *Anderson v. Mascara*, 347 F. Supp. 3d 1163, 1173 (S.D. Fla. 2018) (granting summary judgment on the plaintiff's *Monell* claims because the plaintiff's evidence of at least 560 use-of-force incident reports "[did] not establish that there was misconduct that went uncorrected" (alteration added)); *see also Huaman v. Sirois*, No. 13-cv-484, 2015 WL 5797005, at *12 (D. Conn. Sept. 30, 2015) (finding "vague and ambiguous" spreadsheet exhibits "lack[ed] the specificity and detail required" for the plaintiff to defeat summary judgment on *Monell* claim (alteration added)).

In sum, Plaintiff's evidence fails to create a triable issue of fact showing Defendant had an unofficial policy of detaining disruptive applicants in violation of the Fourth Amendment or of denying housing voucher applications in violation of the First and Fourteenth Amendments.

2. *Decision Made by Final Policymaker*

Under appropriate circumstances, "municipal liability may be imposed for a single decision

---

presumably belong to the same spreadsheet. (*See id.* at 127–2996). Similarly, pages 2997 to 2998 contain eight columns, and pages 2999 to 3000 contain the last two columns of that spreadsheet. (*See id.* at 2997–3000). Because not all the columns are printed on the same page, it is unclear which rows correspond to each other.

by municipal policymakers." *Pembaur*, 475 U.S. at 480. Yet, as the *Pembaur* Court emphasized, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481 (alteration added; footnote call number omitted); *see also Matthews v. Columbia Cty.*, 294 F.3d 1294, 1297 (11th Cir. 2002) ("[O]nly those municipal officers who have final policymaking authority may by their actions subject the government to [section] 1983 liability." (alterations added; internal quotation marks and citations omitted)). Whether an official has final policymaking authority is a question of state law, including law expressed in valid local ordinances and regulations. *See Praprotnik*, 485 U.S. at 124–25. "The fact that a particular official — even a policymaking official — has discretion in the exercise of particular functions does not, without more, give rise to municipal liability on an exercise of that discretion." *Pembaur*, 475 U.S. at 481–82 (citation omitted).

Plaintiff fails to demonstrate the decision of a final policymaker caused either of the alleged constitutional violations. Plaintiff does not even address whether the decisions at issue were made or ratified by final policymakers, focusing solely on trying to show a dispute of fact as to whether there was an unofficial policy shown through a widespread custom or practice, as discussed above. (*See* Resp. 8–9).

Defendant cites *Fusaro v. Hialeah Housing Authority*, 33 F. Supp. 2d 1354 (S.D. Fla. 1999), for the proposition the board of housing commissioners is Defendant's final policymaker. (*See* Mot. 17). Plaintiff does not allege or point to any evidence showing the board "authorized, adopted, endorsed or ratified" the decisions to detain Plaintiff and deny his application. *Fusaro*, 33 F. Supp. 2d. at 1361.[11] Nor does Plaintiff allege or point to any evidence indicating Garcia or Officer Gutierrez is a final policymaker. (*See* Resp. 8–9).

---

[11] Plaintiff named a member of the board of commissioners, Maida Gutierrez, as a defendant in his original Complaint, but subsequently voluntarily dismissed her from the case. (*See* Notice of Voluntary Dismissal).

In sum, summary judgment is appropriate on Counts I, V, and VI because Defendant cannot be held liable under section 1983 where Plaintiff has failed to raise an issue of fact by pointing to some evidence that the challenged decisions were part of an unofficial policy of constitutional violations or were made by final policymakers. As these issues are dispositive, the Court does not address Defendant's remaining arguments regarding the alleged constitutional violations.

### C. Count VII: Fair Housing Act Retaliation

Defendant argues it is entitled to summary judgment on Plaintiff's FHA retaliation claim because Plaintiff cannot establish a *prima facie* case of retaliation and, regardless, Defendant had a legitimate, non-retaliatory reason for denying Plaintiff's Section 8 application. (*See* Mot. 13–15).

To establish a retaliation claim under the FHA, "a plaintiff must assert that a defendant coerced, intimidated, threatened, or interfered with his exercise of rights granted under the FHA[.]" *Philippeaux v. Apartment Inv. & Mgmt. Co.*, 598 F. App'x 640, 644 (11th Cir. 2015) (alteration added; citing 42 U.S.C. § 3617 and *Dixon v. Hallmark Cos.*, 627 F.3d 849, 858 (11th Cir. 2010); other citation omitted). A plaintiff must show: "1) [he] engaged in statutorily protected conduct; 2) the defendant took an adverse action against the plaintiff; and 3) a causal connection exists between the adverse action and the protected activity." *Perez v. Cambeyro*, No. 15-21958-Civ, 2015 WL 9942641, at *6 (S.D. Fla. Sept. 1, 2015) (alteration added; citation omitted). If the plaintiff succeeds in making a *prima facie* case, the burden shifts to the defendant to offer a non-retaliatory reason for the challenged action. *See Bone v. Vill. Club, Inc.*, 223 F. Supp. 3d 1203, 1218 (M.D. Fla. 2016) (citing *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004)).

The parties focus their arguments on whether: (1) Plaintiff engaged in statutorily protected

conduct; (2) there was a causal connection between the adverse action and the protected activity; and (3) Defendant nevertheless had a non-retaliatory reason for the adverse action.[12] Defendant's Motion does not address whether Plaintiff fulfills the first element of the *prima facie* case. (*See generally* Mot.). In his Response, Plaintiff states "[h]is complaints of racial and/or disability discrimination were protected activity." (Resp. 8 (alteration added)). To this, Defendant claims — for the first time in its Reply — Plaintiff's complaint of discrimination was not made in good faith. (*See* Reply 6–7).

Defendant may not raise a new argument in its Reply that was available to it when it filed its Motion. *See Ali v. Margate Sch. of Beauty, Inc.*, No. 11-60102-Civ, 2011 WL 4591878, at *4 (S.D. Fla. Sept. 30, 2011) (noting it was improper for the defendant to raise for the first time in its reply the argument regarding the "protected activity" element of a retaliation claim); *Chappell v. Potter*, No. 1:06-cv-2765, 2007 WL 4200681, at *3 n.1 (N.D. Ga. Nov. 19, 2007) (declining to rely upon new grounds for summary judgment in the defendant's reply based on an argument that the plaintiff did not meet an element of his retaliation claim).

In any event, Defendant's position fails to persuade. "A plaintiff engages in statutorily protected activity when he or she protests . . . conduct which is actually lawful, so long as he or she demonstrates a good faith, reasonable belief that the [conduct engaged in] was . . . unlawful[.]" *Philippeaux*, 598 F. App'x at 644–45 (alterations in original; internal quotations marks and citation omitted; quoting *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998)). "A

---

[12] Plaintiff asserts, without citing legal authority, that "[h]e was subjected to adverse actions, both the original denial, and the failure to reinstate his application." (Resp. 8 (alteration added)). Defendant points out "Plaintiff has provided no evidence that [the] HHA's adverse decisions were motivated by an intent to retaliate against him or to harass him" (Reply 7 (alteration added; citations omitted)) but does not address whether those decisions constitute "coercion, intimidation, threats, or interference." *Bone*, 223 F. Supp. 3d at 1218 ("With respect to the second element, whether [the plaintiff] suffered an 'adverse action,' the relevant question is whether [the defendants'] conduct qualifies as coercion, intimidation, threats, or interference." (alterations added; citations omitted)).

plaintiff's belief that the conduct was unlawful must be objectively reasonable." *Id.* (citation omitted). The parties do not dispute Plaintiff accused De La Cruz of discrimination when she told him he needed to supplement his income documentation. (*See* Def.'s Facts ¶¶ 5–6).

Defendant insists Plaintiff's accusation was not made in good faith for two reasons: there is no record evidence of the type of discrimination of which Plaintiff complained, and Plaintiff testified at his deposition he used that term because he "fe[lt] like the stuff [he] went through . . . [he] didn't deserve to be going through it." (Reply 7 (alterations added; internal quotation marks omitted; quoting Mot. Exs., Ex. C, Hilliard Dep. [ECF No. 86-3] 236:9–13)). But Defendant does not refer to any circumstances showing Plaintiff's complaint of discrimination was objectively unreasonable. While Defendant notes Plaintiff's accusation came only "after he was told that his financial documentation was insufficient" (Reply 7), this fact does not necessarily reveal bad faith. Plaintiff could have reasonably thought De La Cruz was offering a pretextual reason for denying his application. Defendant provides no other support for its assertion that the vagueness of the charge of discrimination or Plaintiff's reasons for the charge show the accusation was objectively unreasonable and not in good faith. Defendant's argument that Plaintiff cannot meet this element of his *prima facie* case thus fails.[13]

Plaintiff also argues there is a causal connection between the incident with the HHA employees and the denial of his Section 8 application and that Defendant offers no legitimate, non-retaliatory reason. (*See* Resp. 8). He insists he was not threatening toward the HHA employees and asserts his application would not have been denied but for this incident. (*See id.*). Plaintiff points to De La Cruz's testimony to show his application would not have been denied but for his

---

[13] Defendant provides no legal authority to explain why Plaintiff's accusation was not made in good faith, other than citing *Philippeaux* for the legal standard of what constitutes statutorily protected activity. (*See* Reply 6–7).

encounter with the HHA employees. (*See* Resp. 8; Resp. Exs., Ex. E, De La Cruz Dep. 83:11–14 ("[W]hen I completed the file that I submitted to review, I didn't see anything negative to interfere or deny his case." (alteration added)).

Defendant disputes the reason for the denial of Plaintiff's Section 8 application. (*See* Reply 7–9). Defendant contends Plaintiff mischaracterizes De La Cruz's testimony, stating it shows the application was denied because of Plaintiff's failure to submit additional documentation corroborating his income. (*See* Reply 8). Specifically, De La Cruz testified Plaintiff's application would have been approved if he had provided the documentation and the incident between Plaintiff and the HHA employees had not occurred. (*See* Mot. Exs., Ex. D, De La Cruz Dep. 83:8–25; 84:1–2; 101:6–22).

The parties dispute the inferences to be drawn from De La Cruz's testimony, and they disagree whether it can support the third element of Plaintiff's *prima facie* case or Defendant's argument it had a non-retaliatory reason for denying Plaintiff's application. *See Anderson*, 477 U.S. at 255 ("[T]he drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." (alterations added)). Summary judgment is improper on this claim.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant Hialeah Housing Authority's Motion for Summary Judgment **[ECF No. 85]** is **GRANTED in part and DENIED in part as follows**:

1. Defendant is entitled to summary judgment on Counts I, III, V, and VI.
2. The case will proceed to trial against Defendant Hialeah Housing Authority on Count VII during the March 2, 2020 two-week trial period.
3. Defendant, Rene Gutierrez is **DISMISSED** without prejudice.

**DONE AND ORDERED** in Miami, Florida, this 4th day of February, 2020.

_____
**CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE**

cc: counsel of record